
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAW INDUSTRIES, INC., a California corporation, <br><br>          Plaintiff - Appellant, <br><br>    v. <br><br> HANGER ORTHOPEDIC GROUP, INC., <br><br>          Defendant - Appellee. | No. 11-56858 <br><br> D.C. No. 3:06-cv-01222-JAH-NLS <br><br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted February 4, 2014
Pasadena, California

Before: PREGERSON and BERZON, Circuit Judges, and AMON, Chief District
Judge.**

---

       *      This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

       **      The Honorable Carol Bagley Amon, Chief District Judge for the U.S. District Court for the Eastern District of New York, sitting by designation.

DAW Industries ("DAW") appeals the district court's grant of summary judgment on its claims that Hanger Orthopedic Group ("Hanger") violated California's Cartwright Act by conspiring to restrain trade in the market for prosthetic microprocessor knees and to attempt to monopolize that market, Cal. Bus. & Prof. Code § 16726; that Hanger engaged in unfair business practices, Cal. Bus. & Prof. Code § 17200; and that Hanger committed trade libel under California law. We affirm on all counts.

**I.** To make out a claim for conspiracy in restraint of trade under the Cartwright Act, DAW must prove that Hanger or its alleged co-conspirators acted in restraint of trade, among other elements. *See Quelimane Co. v. Stewart Title Guar. Co.*, 960 P.2d 513, 525 (Cal. 1998). Malicious action against a competitor with no adverse effect on competition is not actionable under the Cartwright Act. "It is well accepted that 'the antitrust laws . . . were enacted for the protection of competition not competitors.' . . . Injury to a competitor is not equivalent to injury to competition; only the latter is the proper focus of antitrust laws." *Marsh v. Anesthesia Serv. Med. Grp., Inc.*, 200 Cal. App. 4th 480, 495 (Ct. App. 2011) (first ellipses in original) (some internal quotation marks omitted) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999)).

Here, DAW provides *no* evidence whatever, expert or otherwise, that Hanger or its alleged co-conspirators adversely affected competition in the relevant market. And what little anecdotal evidence the record contains cuts against DAW: In the years that Hanger purportedly acted pursuant to its anticompetitive conspiracy, several new prosthetic microprocessor knees entered the United States market. That evidence suggests that competition remained robust, notwithstanding any damage to DAW's sales.

DAW's claim that Hanger conspired in an attempt to monopolize the market in prosthetic microprocessor knees fails for the same reason as its complaint of conspiracy in restraint of trade. A conspiracy to monopolize is unlawful under the Cartwright Act only if the conspiracy has a "dangerous probability of obtaining a monopoly . . . . " *Exxon Corp. v. Superior Court*, 51 Cal. App. 4th 1672, 1687 (Ct. App. 1997) (citing, inter alia, *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 454–58 (1993)). Establishing such a dangerous probability of success "requires inquiry into the relevant product and geographic market and the defendant's economic power in that market." *Spectrum Sports*, 506 U.S. at 459. But DAW offers no evidence at all as to each competitor's share of the market for prosthetic microprocessor knees. One of Hanger's experts discussed data concerning the market for *lower extremity prostheses* in the United States generally — a category

3

which includes all above-the-knee and below-the-knee prostheses, not just artificial knees and not just microprocessor prostheses. Those statistics thus tell us nothing of the relevant market.

For these reasons, we affirm the district court's grant of summary judgment against DAW on its Cartwright Act claims.

**II.** DAW concedes that its unfair business practices claim is premised on its antitrust claim. *See Cel-Tech Commc'ns*, 973 P.2d at 539–40. The claim thus falls alongside DAW's antitrust claims.

**III.** A trade libel claim under California law requires proof of special damages, among other elements. *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988) (applying California law); *Guess, Inc. v. Superior Court*, 176 Cal. App. 3d 473, 479 (Ct. App. 1986). To prevail, a plaintiff "may not rely on a general decline in business arising from the [alleged] falsehood, and must instead identify particular customers and transactions of which it was deprived as a result of the libel." *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 109 (Ct. App. 2004); *accord Erlich v. Etner*, 224 Cal. App. 2d 69, 75 (Ct. App. 1964).

Here, DAW has not specifically identified *any* lost sales traceable to the alleged falsehood. It maintains that it need not do so on a motion for summary

4

judgment, arguing that we should infer that, as sales of expensive, sophisticated prostheses are traceable, DAW will be able to supply the necessary evidence at trial that DAW's decline in sales was caused by Hanger's alleged falsehood. DAW is entitled to no such inference of causation. "A party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial, for in doing so he risks the possibility that there will be no trial." *Walker v. Hoffman*, 583 F.2d 1073, 1075 (9th Cir. 1978) (per curiam).

Here, too, we affirm; the district court properly granted summary judgment on DAW's trade libel claim.

**AFFIRMED.**